UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
**ERNEST A. EDWARDS,**

                Plaintiff,

        – against –

**ST. GEORGE'S UNIVERSITY; ST. GEORGE'S UNIVERSITY LIMITED; ST. GEORGE'S UNIVERSITY, LLC; ST. GEORGE'S UNIVERSITY SCHOOL OF MEDICINE; ST. GEORGE'S UNIVERSITY OFFICE OF INSTITUTIONAL ADVANCEMENT; UNIVERSITY SUPPORT SERVICES, LLC,**

                Defendants.
-------------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

19-CV-4134 (AMD) (SJB)

**ANN M. DONNELLY**, United States District Judge:

The plaintiff, a New Jersey resident, brings this action against the defendants[1]—one a citizen of Grenada and the other a citizen of New York—for injuries he suffered when he slipped and fell on the campus of St. George's University School of Medicine in Grenada. (*See* ECF No. 1.) St. George's University Limited and University Support Services, LLC move to dismiss on *forum non conveniens* grounds. (ECF No. 22.) For the reasons that follow, I grant the motion.

## BACKGROUND[2]

On July 18, 2016, the plaintiff, a part-time exam proctor at St. George's University Limited ("SGU"), was on St. George's University's campus in Grenada. (ECF No. 1 ¶¶ 27, 52.)

---

[1] The defendants contend that St. George's University Limited is "incorrectly named in the [c]omplaint as St. George's University Limited, St. George's University, St. George's University, LLC, St. George's University School of Medicine, and St. George's University Office of Institutional Advancement." (ECF No. 22 at 1.) It appears that the two defendant entities are St. George's University Limited and University Support Services, LLC.

[2] On a motion to dismiss for *forum non conveniens*, the Court accepts the facts alleged in the complaint as true. *Goldfarb v. Channel One Russ.*, 442 F. Supp. 3d 649, 658 n.9 (S.D.N.Y. 2020) (citing *Aguas Lenders Recovery Grp. LLC v. Suez, S.A.*, 585 F.3d 696, 697 (2d Cir. 2009)). In deciding the motion, the

At about 8:00 am, the plaintiff "was caused to slip and fall" in Keith B. Taylor Hall at SGU's True Blue campus. (*Id.* ¶¶ 52-53.) The floor had been mopped, and was "soapy" and "slippery;" there was no warning sign near the slippery area. (*Id.* ¶¶ 54-55.)

The plaintiff filed a lawsuit in Grenada's supreme court on March 15, 2018 against "St. George's University," and then filed an amended complaint against "St. George's University Limited" on April 19, 2018. (ECF No. 22-4; ECF No. 22-5.) The plaintiff alleged that "during the course of his employment and whilst walking out of Taylor Hall where the Claimant was to begin overseeing examinations that were to be conducted slipped on the tiles which were wet thereby causing the Claimant to fall and sustain injuries to his back." (ECF No. 22-5 ¶ 4.) St. George's University Limited responded on May 25, 2018. (ECF No. 22-6.) The Grenada Court held a case management conference on July 19, 2018, at which pre-trial deadlines and related matters were set. (*See* ECF Nos. 22-7-22-8.) For example, the court set the maximum number of witnesses each party was permitted to call, determined that the "estimated duration of Trial shall be One (1) day," and set the deadline for parties to make standard disclosures. (ECF No. 22-8 ¶¶ 1-3, 8.) Almost a year after he filed the Grenada lawsuit, the plaintiff announced on March 6, 2019 that he was "wholly discontinu[ing]" the action. (ECF No. 22-9.) About four months later, on July 17, 2019, the plaintiff filed this action in the Eastern District of New York. (ECF No. 1.) The defendants filed their motion to dismiss on March 13, 2020. (ECF No. 22.)

## LEGAL STANDARD

The *forum non conveniens* doctrine is a "discretionary device [that] permit[s] a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Beyrische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir.

---

Court may consider supplemental materials such as "affidavits submitted by the moving and opposing parties." *Aguas*, 585 F.3d at 697 n.1 (internal quotation marks omitted).

2

2004). "[A] court reviewing a motion to dismiss for *forum non conveniens* should begin with the assumption that the plaintiff's choice of forum will stand unless the defendant" demonstrates otherwise. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001). A court deciding a *forum non conveniens* motion conducts a three-part inquiry: first, the court determines the "degree of deference properly accorded the plaintiff's choice of forum;" second, the court evaluates "whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute;" and finally, the "court balances the private and public interests implicated in the choice of forum." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).

"'[T]he central purpose of any *forum non conveniens* inquiry' is . . . 'to ensure that the trial is convenient.'" *Id.* at 154 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)). Dismissal for *forum non conveniens* is warranted "only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Iragorri*, 274 F.3d at 74-75. The defendant must prove that the action should be dismissed. *See DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 ("a strong favorable presumption is applied" to the plaintiff's choice of forum, which "will stand unless the defendant can demonstrate that reasons exist to afford it less deference"); *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009) ("The defendant bears the burden of establishing that a presently available and adequate alternative forum exists, and that the balance of private and public interest factors tilts heavily in favor of the alternative forum.").

**DISCUSSION**

### A. Deference to the Plaintiff's Choice of Forum

"[T]he degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." *Iragorri*, 274 F.3d 65, 71 (2d Cir. 2001). U.S. citizenship is not of "talismanic significance." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000). Instead, a "lawsuit's bona fide connection" to the selected forum is the touchstone. *Iragorri¸* 274 F.3d at 72. "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." *Id.* at 71-72. "On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands." *Id.* at 72. In short, where "considerations of convenience favor the conduct of the lawsuit in the United States," the plaintiff's choice of forum is entitled to great deference. *Id.*

This case has certain distinctive features that reduce the deference to which the plaintiff's choice of forum is due. The rule that a U.S. citizen's choice of a U.S. forum is entitled to great deference is premised on the assumption that the citizen is also a U.S. resident. *See Id.* at 73 n.5. Moreover, "the deference to an American citizen or resident plaintiff's choice of forum is significantly diminished where the lawsuit arises from business that the plaintiff conducted abroad." *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 552 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014). While the plaintiff is a U.S. citizen[3] and resides in New Jersey, he has also "resid[ed] in Grenada part-time . . . [since] 2013," and was employed there.

---

[3] "[T]he home forum of an American citizen for *forum non conveniens* purposes is any United States court." *Wiwa*, 226 F.3d at 103 (internal quotation marks omitted). Thus, the fact that the plaintiff brought suit in New York rather than New Jersey does not count against him in the analysis.

4

(ECF No. 24-2 ¶¶ 2-3.) In fact, the incident from which this action arises took place in the course of the plaintiff's employment in Grenada. (ECF No. 1 ¶¶ 27, 52-55.) Even aside from the plaintiff's employment status, "the core operative facts upon which the litigation is brought bear little connection to [New York]." *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 269 (S.D.N.Y. 2010); *accord Wenzel v. Marriott Int'l, Inc.*, No. 13-CV-8335, 2014 WL 6603414, at *3 (S.D.N.Y. Nov. 17, 2014), *aff'd*, 629 F. App'x 122 (2d Cir. 2015) (finding lesser deference was due to the plaintiffs' choice of forum because the "alleged negligence and injury occurred in Aruba").

The other unusual feature of this case is that the plaintiff originally brought his lawsuit in Grenada, where the defendants say the case belongs. (ECF Nos. 22-4, 22-5.) Not only did the plaintiff file the case there, the defendant filed an answer to the plaintiff's suit and the parties litigated it for almost a year, including appearing at a case management conference at which final pre-trial deadlines were set. (*See* ECF Nos. 22-6, 22-8.)[4] The defendants cite this as evidence of forum shopping. (ECF No. 25 at 6-7.) There is some suggestion that the plaintiff is trying to create a reason for bringing the case here; for example, he has only recently added a New York-based entity—University Support Services, LLC ("USS")—to the case; that entity was not part of his original suit in Grenada. (*See* ECF Nos. 22-4-22-5.) In addition, the decision to end the litigation after a court hearing and some amount of discovery could suggest that the plaintiff saw that the case was not going well in Grenada, and that he might fare better in a U.S. court.

---

[4] The parties dispute the extent of discovery before the action was discontinued. The defendants assert "[u]pon information and belief" that the "case had proceeded through the completion of discovery, and SGU had timely complied with all discovery obligations in the Case Management Order." (ECF No. 22-2 ¶ 10.) According to the plaintiff, however, "no discovery took place or was exchanged" after the July 19, 2018 case management conference—neither party was deposed, the plaintiff did not answer interrogatories and the relevant medical records were never provided to the defendants. (ECF No. 24-2 ¶ 25.)

Nevertheless, I credit the plaintiff's sworn representations that he originally meant to file suit in New York, that his need to find counsel who would take his case on a contingency-fee basis limited his options, and that the New York-licensed attorney he retained became a judge shortly after he took the plaintiff's case. (ECF No. 24-2 ¶¶ 23-24.) In light of the plaintiff's struggle to secure "appropriate legal assistance,"[5] *Iragorri*, 274 F.3d at 72, I find that his choice to sue in New York is entitled to moderate deference. *Cf. Bigio v. Coca-Cola Co.*, 448 F.3d 176, 178-179 (2d Cir. 2006) (holding that plaintiffs' choice of U.S. forum was entitled to significant deference where the plaintiffs were previously "[u]nable to obtain relief in the Egyptian courts"); *LaSala v. Bank of Cyprus Pub. Co.*, 510 F. Supp. 2d 246, 257 (S.D.N.Y. 2007) ("it is not forum-shopping for plaintiffs to file this action here, after filing suit against [the defendant] in Cyprus, as they were obliged to sue him there after unsuccessful attempts to bring him to trial here").

### B. Adequate Alternative Forum

"An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux*, 329 F.3d at 75 (2d Cir. 2003). A forum may nonetheless be inadequate if "characterized by a complete absence of due process or an inability of the forum to provide substantial justice to the parties." *In re Arb. Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 499 (2d Cir. 2002). Although "the defendant bears the ultimate burden of persuasion as to the adequacy of the forum," "the plaintiff bears the initial burden of producing evidence of corruption, delay or

---

[5] Although I credit the plaintiff's account of his difficulty securing counsel, I do not consider his claim that SGU's "local clout"—its status as "the largest private employer in Grenada" and a lessor of Grenadian land—has a "chilling effect on local attorneys willing to cast SGU as an adversary." (ECF No. 24 at 12.) Principles of comity preclude this Court from determining that a foreign judicial system features the sort of systematic bias the plaintiff asserts without strong evidence thereof.

lack of due process in the foreign forum." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009).

The evidence establishes that Grenada is an adequate alternative forum for this action. First, each of the defendants is, or may be, amenable to service of process in Grenada. St. George's University Limited was served there in connection with this action. (ECF No. 16.) Although the plaintiff claims that the defendants have failed to "show *prima facie*, that defendant [USS] is subject to the jurisdiction of a Grenadian court" (ECF No. 24 at 16), USS counsel represents that it "is amenable to jurisdiction in Grenada for [the p]laintiff's claims if this case is dismissed on the basis of *forum non conveniens*." (ECF No. 25 at 10); *In re Union Carbide Corp. Gas Plant Disaster*, 809 F.2d 195, 203-04 (conditioning *forum non conveniens* dismissal on party's agreement to be amenable to jurisdiction in foreign court is "not unusual and ha[s] been imposed in numerous cases.").[6] Second, it is clear that Grenada permits litigation of the subject matter of the dispute—a tort arising from a slip-and-fall—because the plaintiff filed and litigated his lawsuit there before dismissing it. (*See* ECF Nos. 22-4-22-5.)

The plaintiff also suggests that Grenadian courts are biased in favor of SGU and its related entities (ECF No. 24 at 12), but offers little if any evidence to support that conclusion. "Absent a showing of inadequacy . . . 'considerations of comity preclude a court from adversely judging the quality of a foreign justice system.'" *Abdullahi*, 562 F.3d at 189 (quoting *PT United Can Co. Ltd v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998)). Moreover, Second Circuit courts have found that "Grenada is an adequate alternative forum" when SGU is a defendant. *See, e.g.*, *La Russo v. St. George's Univ. Sch. of Med.*, 936 F. Supp. 2d 288, 305 n.13

---

[6] In the Reply Brief, Margaret A. Dale, counsel for USS, "affirmatively states that . . . [USS] is amenable to jurisdiction in Grenada" if this action is dismissed. (ECF No. 25 at 10.) Thus, and as explained below, the Court conditions its dismissal of this case on USS' express commitment to be amenable to jurisdiction in Grenada.

7

(S.D.N.Y. 2013), *aff'd*, 747 F.3d 90 (2d Cir. 2014) (dismissing action for failure to state a claim, and explaining that dismissal was also warranted under *forum non conveniens*).

### C. Private and Public Interest Factors

In the third and final step of the *forum non conveniens* analysis, the court balances private and public interest factors "to ascertain whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum proposed by the defendant." *Iragorri*, 274 F.3d at 73. These factors weigh in favor of dismissal.

#### i. Private Interest Factors

The private interest factors include: "the relative ease of access to sources of proof; [the] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [the] possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Iragorri*, 274 F.3d at 73-74 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). In evaluating these factors, "the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues. In a suit alleging negligence, for example, the court might reach different results depending on whether the alleged negligence lay in the conduct of actors at the scene of the accident, or in the design or manufacture of equipment at a plant distant from the scene." *Id.* at 74.

The private interest factors, although mixed, tip in favor of dismissal. Because the alleged wrongful conduct took place in Grenada, relevant liability evidence—the testimony of eyewitnesses (students, medical school employees) and janitors—may lie primarily in Grenada.[7]

---

[7] Although the plaintiff argues his theory of negligence is that the defendants' actions and inactions in New York exacerbated his damages, these allegations are not in his complaint.

In addition, the Court may not be able to compel the attendance of non-party witnesses. For example, it is not clear that one witness—the "cleaner who performed the [allegedly] negligent mopping," is "likely still" the defendant's employee, if in fact she or he ever was. (*See* ECF No. 24 at 17.) Thus, a key non-party witness may be beyond the reach of this Court. There is also Grenada-based evidence on damages—records and witnesses pertaining to the plaintiff's initial medical examination and treatment, as well as the physical therapy he underwent in Grenada after July 2017. (*See* ECF No. 24-2 ¶¶ 11, 19.)

On the other hand, to the extent that some eyewitnesses were students, they may no longer be in Grenada. For example, the plaintiff has identified as eyewitnesses two St. George's students who now appear to live in New York. (ECF No. 24-2 ¶¶ 7-9.) The defendants say only that "there is no basis to believe that either potential witness . . . has any knowledge or recollection of the alleged events," and thus, "the convenience of those witnesses cannot factor into the . . . analysis." (ECF No. 25 at 11-12.) I disagree. I credit the plaintiff's sworn assertions that these witnesses helped him up after he fell, gave him their contact information, and were interviewed by Grenada's National Insurance Scheme in connection with the plaintiff's workers' compensation claims. (ECF No. 24-2 ¶¶ 7, 15.)[8] Nor would trial in this case require a visit to the accident site, as the condition of unmarked slipperiness is temporary and pictures and videos of the area can be produced easily.

Finally, the fact that the plaintiff also received medical care in New York and New Jersey is entitled to less weight, *see Wenzel*, 2014 WL 6603414, at *3 ("the Court declines to hold that

---

[8] The plaintiff submitted an affidavit in which he refers to a letter from the National Insurance Scheme to SGU's human resources manager relaying the plaintiff's entitlement to workers' compensation benefits. (ECF No. 24-2 ¶ 15.) Although the plaintiff asserts that a copy of that letter was "attached to [his] attorney's papers," (*id.*), the letter does not appear on the record.

9

the fact that [the plaintiff] received medical care in New York is, in itself, sufficient to establish a bona fide connection with this forum, given that the acts necessary to establish liability happened elsewhere"), although the evidence may be relevant to damages.

In short, the "precise issue" "to be actually tried" is whether the defendants, through the janitor's conduct, created an unreasonably dangerous situation by leaving a slippery floor without adequate warning signs. That issue involves conduct that happened in Grenada. Accordingly, these factors tip in favor of dismissal.

        ii.    *Public Interest Factors*

Public interest factors include court congestion, whether trying the action would burden members of a community with little connection to the litigation with jury duty, the "local interest in having localized controversies decided at home," and the law to be applied in the case. *Iragorri*, 274 F.3d at 74 (quoting *Gilbert*, 330 U.S. at 508-09).

These factors favor dismissal. As the defendants emphasize, the Eastern District of New York is unquestionably one of the busiest courts in the nation. (ECF No. 22-1 at 11.) One of the relevant considerations in this analysis is whether "all judicial vacancies are filled, resulting in a 'full complement of judges for the District.'" *HSBC USO, Inc. v. Prosegur Paraguay, S.A.*, No. 03-CV-3336 (LAP), 2004 WL 2210283, at *2 n.1 (S.D.N.Y. Sept. 30, 2004) (quoting *Guidi v. Inter-Cont'l Hotels Corp.*, 224 F.3d 142, 146 n.5 (2d Cir. 2000)). There are at least three vacancies in the Court, and currently no nominees for those vacancies. More importantly, the plaintiff's case is a Grenada case. The events happened in Grenada and the plaintiff asserts his claims under Grenada law. (ECF No. 1 ¶ 60.) These public interest factors favor dismissal. While, as the plaintiff argues, this Court has an interest in ensuring that U.S. citizens' legal rights are vindicated (ECF No. 24 at 18), the *forum non conveniens* test takes that general public

10

interest into account—including the deference it accords citizens' choice of forum and the burden it places on the defendant to demonstrate an adequate alternative forum exists.

The defendants have met their burden of showing that litigation in this Court would be very inconvenient; key witnesses may not be subject to this Court's jurisdiction, and litigation in Grenada is preferable because key evidence and witnesses are there. The plaintiff's choice of forum is entitled to reduced deference, Grenada is an adequate alternative forum, and the private and public interest factors favor the Grenadian forum. Accordingly, *forum non conveniens* dismissal is warranted.

## CONCLUSION

Accordingly, conditioned upon USS expressly committing to making itself amenable to jurisdiction in Grenada, the defendants' motion to dismiss is granted.

**SO ORDERED.**

                                                                                                        s/Ann M. Donnelly
                                                                                                    ANN M. DONNELLY
                                                                                                    United States District Judge

Dated: Brooklyn, New York
           February 2, 2021